[Civ. No. 34204.   Second Dist., Div. Five.   June 23, 1969.]

THE PEOPLE, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; PATRICIA ANN PIERSON, Real Party in Interest.

Evelle J. Younger, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

THE COURT.—The People petition for a writ of mandate requiring the superior court to vacate an order to suppress certain evidence (Pen. Code, § 1538.5) in a pending criminal case against Patricia Ann Pierson, the real party in interest.

We grant the writ, not because we necessarily disagree with the superior court on the question of the illegality of the challenged search and seizure, but because the record shows that the court applied an erroneous principle of law and because there is no way of telling just what the court suppressed.

A thumbnail sketch of the evidence will suffice. The police were told by a reliable informer that Bobby Pierson was dealing in narcotics from his home. Two officers went there. One Levy came out of the house. When one officer identified himself, Levy made a suspicious movement with his hand, turned back toward the house and shouted a warning to "Bobby." Bobby escaped through the back of the house. Levy was arrested in front of the house and taken inside. The police knew he did not live there. He was searched and heroin was found on his person. Patricia Ann Pierson had come into the living room during the search of Levy's person. The house was then searched. Heroin and capsules containing Nembutal, a restricted dangerous drug, were found in a canister in the "single" bedroom of the home. A search of a truck parked on the driveway disclosed more Nembutal.

Both Levy and Patricia were charged with possession of

heroin for sale (Health & Saf. Code, § 11500.5). Patricia was also charged with possession of a restricted dangerous drug for sale (Health & Saf. Code, § 11911).

Both Levy and Patricia moved to dismiss the information (Pen. Code, § 995) and to suppress the seized contraband as evidence (Pen. Code, § 1538.5). No new evidence was offered to support the 1538.5 motion, which was submitted on the transcript of the preliminary hearing. The confusion in the record results from the almost total failure of the participants in the proceedings to specify, when the occasion called for it, what contraband was being discussed.

During the discussion the court expressed the thought that it was reasonable to infer that Levy had obtained his heroin from somebody inside the house, possibly Patricia.

After some argument, the court made the following rulings, most of which were sandwiched in between further argument by counsel for Levy or Patricia.

1. The court first ruled that it was ''going to grant'' the ''motion under 1538.5 to suppress the evidence concerning the pills and the heroin *so far as the defendant Patricia Ann Pierson is concerned.* (Our italics.)

2. It denied Levy's motion to suppress.

3. It denied Patricia's and Levy's motions to dismiss.

4. It granted the motion of Pierson to suppress the evidence, *''all of the evidence.''* (Our italics.) The record does not show whether this was merely intended to be a repetition of the first ruling, or an enlargement on it.

After the rulings the following colloquy took place between the prosecutor and the court:

''MR. DENMARK: What I want is your reasoning on the record. I just want to make sure it is not an issue of credibility. THE COURT: No, it is not an issue of credibility. It is a question that the contraband that is in evidence as far as the Defendant Pierson was obtained by illegal means beyond the reasonableness of the search necessary to effectuate the arrest. MR. DENMARK: The People's position would be also on that— I haven't made myself clear at this point, but just as an afterthought, the arrest of the Defendant Levy was contemporaneous with the search of the house in the fact that the man was walking back towards the house. They arrested him at the threshold of the house. I think we are splitting hairs. THE COURT: I can't agree with you to that extent. I don't think that you need any evidence to convict her other than what you have in his possession so far as— he may turn State's

witness for you,[1] but be that as it may, I am making it clear that *all of the contraband inside the house,* in my opinion, was illegally obtained as the result of an illegal search, or at least was not an incident to a legal search, and therefore will be suppressed.'' (Our italics.)

The court then ordered the defendants arraigned on all counts. Just before Patricia was arraigned on the count relating to the Nembutal, the prosecutor, not unreasonably, said: ''I am just trying to think about the evidence in Count II.'' The court replied: ''It doesn't matter. The evidence is suppressed, but you may not need it for a conviction. At least arraign her on both counts.''

The record shows conclusively that the court entertained the erroneous notion that evidence could be suppressed as to one defendant and not as to another. ▮ In a jurisdiction, such as ours, where a defendant need not have standing to object to illegally obtained evidence (*People* v. *Martin,* 45 Cal.2d 755, 759-761 [290 P.2d 855]), a seizure is either legal or illegal, regardless of the person against whom the prosecution seeks to introduce the evidence. (*People* v. *Monson,* 255 Cal.App.2d 689, 691 [63 Cal.Rptr. 409].)[2]

Therefore, if the court suppressed certain evidence as to Patricia, but did not do so as to Levy, theoretically it found at the same time that the evidence was both legally and illegally obtained.[3] ▮ Nevertheless, we might have to deny the writ if the record were perfectly clear that the seizure was illegal. The trouble is that it is far from clear just what the court ordered suppressed. There was evidence of: 1. Nembutal pills inside the house; 2. Nembutal pills outside the house, in the truck; 3. heroin inside the house, in the canister; and 4. heroin on Levy's person, which was moved from outside the house to inside, when Levy was brought in.

With these facts in mind, what did the court suppress, when it said it would suppress the evidence ''concerning the pills and the heroin?'' When it actually suppressed ''all of the evidence'' did that include the heroin on Levy's person?

---

[1]The propriety of the denial of Patricia's 995 motion is not before us. We therefore express no opinion on the correctness of the court's explanation of the ruling.

[2]We are, of course, talking about Fourth Amendment rights. The rule is different with respect to asserted violations of the Fifth Amendment. (*People* v. *Varnum,* 66 Cal.2d 808, 811-813 [59 Cal.Rptr. 108, 427 P.2d 772].)

[3]Of course, this cannot be. Were Levy before us he could argue with much logic, that if the ruling was correct as to Patricia, it must have been in error as to him.

Literally, of course it did, but the quoted colloquy between the court and the prosecutor indicates the contrary; nor does such an interpretation square with the thought that Patricia must stand trial on the heroin count because it could be inferred that Levy obtained his heroin from her.[4]

The fault is mostly counsel's. A slipshod motion begot a slipshod ruling. When he moved to suppress, he should have clearly specified what exhibits offered at the preliminary hearing he wanted suppressed. Of course he was mostly concerned about the cache in the canister and perhaps not at all about the pills in the truck. Maybe everybody at the hearing below knew what everybody else was talking about, but we do not.

The petition must, therefore, be granted. We have purposely not discussed the merits of whatever ruling the court has made, because we are not sure just what it ruled and also, if the motion to suppress is renewed, further evidence may be offered which may clarify certain aspects of the events which preceded the seizures.

Let a peremptory writ of mandate issue, ordering the respondent court to vacate its order suppressing certain evidence.

---

[4]We would feel more certain of this point were we not aware of the colloquy between the court and the prosecutor at the arraignment on count II. If the court thought that the People did not need the pills to obtain a conviction on that count, it may also have thought that Patricia could be convicted on the heroin count on the theory that the heroin found on Levy had been obtained from her, even though it had just suppressed it.