[Civ. No. 12528. Fourth Dist., Div. One. Jan. 30, 1973.]

GEORGE WASHINGTON BARBER et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Knoll & Scholl and Peter F. Knoll, Jr., for Petitioners.

Edwin L. Miller, Jr., District Attorney, Terry J. Knoepp and Anthony D. Samson, Deputy District Attorneys, for Real Party in Interest.

No appearance for Respondent.

## OPINION

**BROWN (Gerald), P. J.**—George Washington Barber and his wife Linda Marie Barber are charged with possessing narcotics (Health & Saf. Code, § 11500), possessing narcotics for sale (Health & Saf. Code, § 11530.5), both while armed with a deadly weapon (Pen. Code, § 12022), with possessing marijuana (Health & Saf. Code, § 11530), possessing a sap or blackjack (Pen. Code, § 12020), carrying a loaded firearm in a vehicle (Pen. Code, § 12031, subd. (a)), and carrying a concealable weapon in a vehicle (Pen. Code, § 12025, subd. (a)).

Their motions under Penal Code sections 995 and 1538.5 were denied. This petition, brought under Penal Code section 1538.5, seeks mandate to compel suppression of evidence found in a search of their automobile on the ground the search occurred during an unlawful detention. Their contention is meritorious. The petition should be granted.

On September 12, 1972, about 2:45 a.m., while on routine patrol, Escondido Officer Santibanez saw a car parked on the dirt shoulder of Via Rancho Parkway east of Highway 395. Santibanez's routine procedure was to "check" vehicles in the area like that, his purpose being to check on the occupants' well-being to see "if he could aid in their assistance in any way."

After stopping his patrol vehicle behind the parked car, Santibanez walked up to Barber's automobile. Although he saw all persons in the car were sleeping and were in no obvious need of assistance, he nevertheless rapped on the left front window. George Barber rolled it down. The officer asked if everything was all right; Barber said it was. Nothing indicated otherwise. Santibanez then probed further: he asked to see some identification. Barber showed him his social security card. Santibanez asked if Barber had any identification with his birth-date, preferably a driver's license. Barber did not produce other identification, but said he thought his driver's license was in some clothing he had in the trunk. Barber went to the trunk, checked some clothing, but came up with no identification.

Other officers arrived and began talking to Barber. Santibanez radioed for warrant checks. The other officers left. Santibanez told Barber he was running a check, and while it was being run Barber could wait in his car.

Within two minutes, the dispatcher notified Santibanez there were no local warrants outstanding, but said she was still checking the San Francisco area. Upon learning this, the officer drove about two blocks away. Within

three or four minutes, Santibanez learned there were five misdemeanor warrants outstanding for Barber in the San Francisco area, called a cover unit, returned to Barber's car and arrested him. Barber was handcuffed and placed in the back seat of the police car.

Santibanez then went back to Barber's car and beamed his flashlight inside. He saw an automatic pistol on the driver's seat, picked it up and learned it was loaded. Continuing his search, in the console area he found seven .38 caliber live rounds. Santibanez then told Barber a charge of carrying a loaded weapon would also be made.

Searching further, the officer found a sap, or blackjack, in Mrs. Barber's purse. Searching the trunk, Santibanez saw a light blue cotton shirt wadded in a large ball. He felt something in it, unwrapped it and recognized three tinfoil-wrapped packages of heroin. Ten small bindles of heroin were within one. At the police station, officers found more heroin sewn into the pockets of the shirt; they also found a very small amount of marijuana (18.7 grams) loose and rolled into a cigarette, in a small tool box.

■ When Santibanez approached Barber's legally parked car and awakened him, he neither suspected nor had any reason to suspect any illegal behavior. His purpose, to ascertain the well-being of the occupants, was accomplished when he looked in the car and saw the family asleep, and at most when Barber told him everything was all right.

Santibanez's further actions had nothing to do with any suspicion or hunch, articulable or otherwise (see *Irwin* v. *Superior Court,* 1 Cal.3d 423, 426-427 [82 Cal.Rptr. 484, 462 P.2d 12]) that Barber and his family were doing anything other than resting by the roadside, as do many drivers, sleepy from travel, before continuing safely and alertly in traffic on the road.

■ ■ ". . . Substantial circumstances [are required] to justify the detention and questioning of persons . . ." (*People* v. *Moore,* 69 Cal.2d 674, 683 [72 Cal.Rptr. 800, 446 P.2d 800]). "[T]he police officer must be able to point to specific and articulable facts which . . . reasonably warrant that intrusion." (*Terry* v. *Ohio,* 392 U.S. 1, 21 [20 L.Ed.2d 889, 906, 88 S.Ct. 1868].) " 'There must be a "rational" suspicion by the peace officer that some activity out of the ordinary is or has taken place . . . some indication to connect the person under suspicion with the unusual activity . . . [and] some suggestion that the activity is related to crime.' [Citation.] Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful." (*Irwin* v. *Superior Court, supra,* 1 Cal.3d 423, 427.)

■ ■ What Santibanez saw—a family asleep in its car by the road-

side in the middle of the night—was not merely "as consistent with innocent activity as with criminal activity," it was only consistent with innocent activity. Officers are not at liberty to stop, intrude upon and detain individuals they happen to come upon to determine if there are warrants outstanding against them. After Barber told him everything was all right, Santibanez had no justification to detain Barber and his family for any reason. His request for further identification and his detention of Barber, by telling him he could wait in the car while the warrant checks were being run, were prompted only by "general curiosity, were unrelated to probable cause and violated both the spirit and letter of the Fourth Amendment." (*People* v. *Williams,* 20 Cal.App.3d 590, 592 [97 Cal.Rptr. 815].)

Let a writ of mandate issue as prayed.

Ault, J., and Coughlin, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.