[Crim. No. 23119. Second Dist., Div. Two. July 17, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
RODNEY STENVEY MANNING, Defendant and Respondent.

588

## COUNSEL

Roger Arnebergh and Burt Pines, City Attorneys, David M. Schacter and Marshall Rubin, Deputy City Attorneys, for Plaintiff and Appellant.

Joseph P. Busch, District Attorney (Los Angeles), and Harry B. Sondheim, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Appellant.

Richard S. Buckley, Public Defender, Michael M. Crain and Harold E. Shabo, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**COMPTON, J.**—Defendant was charged by complaint in the municipal court with violation of former Health and Safety Code section 11910 (possession of barbiturates; see now Health & Saf. Code, § 11377). Pursuant to subdivision (g) of Penal Code section 1538.5, defendant's motion to suppress the contraband was heard at a special hearing held immediately before the time scheduled for the trial. Only the arresting officer testified. At the conclusion of the special hearing the court granted a motion to suppress and, for that reason, dismissed the complaint.

As authorized by subdivision (j) of Penal Code section 1538.5, the People appealed from the suppression order to the appellate department of the Superior Court of Los Angeles County. In a written opinion, that department reversed the suppression order and remanded the cause to the municipal court for further proceedings. However, on its own motion and pursuant to rule 63, California Rules of Court, the department certified transfer of the appeal to this court as doing so appeared "necessary to settle important questions of law." The department set forth those questions as follows:

"What formal requirements are there for a motion under Penal Code section 1538.5? What are the penalites for noncompliance with the requirements?

"What standards are to be used by an appellate court in passing upon the action of the trial court in granting such a motion to suppress evidence?"

The department added, "We feel an expression by a higher court would

be of assistance not only to the trial courts in considering the many motions filed under this section but to us in reviewing their decisions."

We certified transfer of the appeal and such transfer being for "hearing and decision" of the appeal from the municipal court (rule 62(a)), we received additional briefs (rule 65) and heard argument. We reverse the order suppressing evidence and, consequently, the order dismissing the complaint and remand the case to the municipal court for further proceedings. Although we conclude that the evidence received on hearing of the motion to suppress warranted only the denial of that motion, in keeping with the certification we discuss the formal requisites of such motions and the standards for reviewing rulings upon them.

To illuminate the contentions of these parties, it is necessary to recite both the procedure and facts of the case in some detail. At arraignment on August 22, 1972, the cause was assigned to a trial department and trial was set for September 11. Apparently counsel for defendant mentioned a motion to suppress and, with reference to the trial date, the court's order read, "1538.5 motion to serve and file 10 days prior." However, no notice of such a motion was ever filed or served on behalf of defendant.

On the trial date (trailed to September 12), defendant was represented by a deputy public defender other than the one who represented him at arraignment and the People were represented by another deputy city attorney. On counsel's announcing of his motion to suppress, no specific objection was made by either the court or counsel for the People to the lack of notice. However, the court asked counsel "to state the grounds for your motion and the matters you seek to have suppressed." Counsel replied: "We seek to have suppressed any and all contraband which was seized by the arresting officers in connection with this case, specifically but not limited to four capsules containing a substance resembling Seconal, on the ground that it was seized in violation of [defendant's] Fourth Amendment rights with regard to search and seizure."

On the court's urging to elaborate, counsel professed his inability to do so and the court admonished, "Counsel, if you want to be strict about it, the 1538.5 hearing is supposed to be initiated by the filing of a written notice of motion and points and authorities specifying the particular authority upon which the legal grounds are based and the objection is founded and the particular items sought to be suppressed. . . .

"It's a matter of discretion which this court and most courts don't insist upon."

Further discussion of the problem proved unfruitful, although counsel for the People stated his objection that: "I don't know upon what grounds the suppression is being sought, what the legal argument is. I think defense counsel is forcing me to put on my case from the very beginning to the very end, because I don't know what he is claiming and, in effect, it's a complete trial prior to having a jury trial."

The special hearing on the motion proceeded, the People called Los Angeles Police Officer Rodney Sieg as their only witness, and he was briefly examined and cross-examined. The defense offered no evidence. In the interest of fidelity to the record, we quote extensively from the transcript in reciting the testimony and the ruling.

At about 8:25 on the morning of August 19, 1972, Officer Sieg and his partner, both in uniform and on regular patrol in a police vehicle, were patrolling in the area of Cahuenga and Selma Avenues. Officer Sieg "noticed the defendant slumped over in the back seat of a 1965 T-Bird parked in the corner parking lot at that location." The officers parked their vehicle behind the "T-Bird" and Officer Sieg approached it on the right-hand side, his partner following some distance behind. After Officer Sieg had walked up to the "T-Bird," he observed that defendant "was seated in the right back seat slumped over as if unconscious." There was no one else in the car and the right front window was down.

Officer Sieg spoke to defendant through the open window and "asked the defendant if he was okay. He mumbled something. I couldn't understand what he said. I asked him to exit the vehicle." Because of its apparent significance in the court's ruling, we refer at this point to the later cross-examination as to the initial words that may have passed between Officer Sieg and the defendant. As a random question, the officer was asked, "What was it you first said to [defendant] prior to the time you told him to exit the car? Did you say something prior to that time? The officer answered, "I believe I asked him if he was sick or all right." The questioning then abruptly turned to an unconnected matter. In response to the officer's request for him to exit the vehicle, the defendant "mumbled something," the officer opened the front door, and "defendant pushed the right front seat forward and got out." The seat remained pushed forward, the door remained open, and the officer "glanced into the automobile, and on the floor where the defendant—in front of where the defendant was sitting on the right hand side, I saw four capsules that contained a white substance resembling Seconal." At this time the officer was standing at the end of the opened door.

On defendant's getting out of the car, Officer Sieg observed that his

"speech and actions were extremely slow. His eyes were watering. His eyes were dilated. He had saliva running from both corners of his mouth and no alcoholic beverage on his breath."

Officer Sieg concluded that "he was under some type of drug, not alcohol." However, this detailed observation of his symptoms was not made until defendant had exited the vehicle and Officer Sieg had seen the four capsules. The capsules were taken from the car and became the basis for the arrest and charge.

Turning to the court's ruling and the grounds for it, the court initially stated:

"What troubles the Court is this.

"There's no question in the Court's mind that the officer did have probable cause to arrest the defendant in this case once the officer had observed the various symptoms, including the defendant's speech, his actions, the appearance of his eyes and his mouth.

"There's also no doubt on the Court's mind that the officer could properly seize those Seconal pills which he observed as the result of the defendant's leaving the vehicle, once the defendant had left the vehicle, assuming that it was proper to make the defendant leave the vehicle.

"The question is this . . . whether the officer had a right to require the defendant to alight from the vehicle.

"Now, admittedly, the circumstances of a person being slouched in his vehicle is a suspicious circumstance and perhaps should warrant investigation so as to require a defendant to exit under some circumstances. However, the Court notes here the fact that it was morning *and the defendant did indicate that he was all right.* (Emphasis added.)

"Once the defendant's exit is established as a lawful command of the officer, then there's no problem. . . .

"Of course, you are faced here with *the fact that the evidence says that the defendant said that he was all right before exiting.* (Emphasis added.)

"Tell me this, Mr. [counsel for the People]. Under the case law that exists today, if you had been driving and you decided you would stop and go into a parking lot, which is also a consideration here, the fact that it is a parking lot and not on the street, and decide that you would curl up in the back seat and take a snooze, and then an officer came up to you and asked you if you were all right, *and let's say you said you were* [emphasis added], then do you think that under the case law today the

officer would have the right to have you exit the vehicle? [Counsel replied, "I think it's perfectly proper . . . What's an officer going to do? . . . He doesn't know whether the defendant is all right . . . I think it's his duty and obligation to further investigate, and it is not unreasonable to ask the defendant to get out to see whether or not if, in fact, he is all right."]

"The Court is going to grant the motion to suppress.

"The Court finds that the officer did act with commendable concern for the defendant's welfare, and the Court doesn't in any way question the motives of the officer or what he did. I think, also, that the officer is to be commended for the candor with which he stated that the symptoms which he observed, which did give him probable cause to arrest the defendant, were observed only after he did, in fact, have the defendant exit from the vehicle.

"Now, regardless of what the Court's own views on the matter might be, the case law does require something more than what was present here to justify the exiting of the defendant from the vehicle. This did, in effect, amount to a detention, as that concept is defined by the courts. The defendant was, in effect, deprived of his freedom of movement to some respect.

"The Court finds that under the recent decisions of the State Supreme Court, there was insufficient basis at that time for the officer to have this man exit from the vehicle; and that, therefore, the information which the officer later acquired, which did give him probable cause to arrest, has to be suppressed. The motion to suppress is granted."

Thus by comparison of the court's remarks with the officer's testimony it becomes plain that the court erroneously assumed that the defendant replied that he was "Okay" or "All right." Moreover, the court concluded that the officer should have been satisfied by that assumed response and that decisional law precluded any further steps on the officer's part including, specifically, his asking the defendant to exit the vehicle. We return briefly to the substance of that question after mention of the points raised by the appellate department.

The department ruled that in order to be entitled to the special hearing provided by subdivision (g) of Penal Code section 1538.5, the misdemeanor defendant must notice his motion in writing. Of course, the department's view as to this particular motion is readily understandable in that the municipal court's order at arraignment provided for service and filing of the motion 10 days prior to the date then set for trial and, in

addition, the oral motion when made at the time of trial did not specify any meaningful "grounds" upon which it was made. However, as a general proposition we cannot agree that section 1538.5 imposes an invariable requirement of a written motion as a prerequisite to a hearing under subdivision (g).

While the need for a specification of the evidence to be suppressed and the grounds for suppression has repeatedly been stressed, the decisions have not necessarily equated that need with a written motion, filed and served. (See, e.g., *People* v. *Cagle,* 21 Cal.App.3d 57, 61 [98 Cal.Rptr. 348]; *People* v. *Tremayne,* 20 Cal.App.3d 1006, 1013 [98 Cal.Rptr. 193]; *People* v. *Wolder,* 4 Cal.App.3d 984, 996 [84 Cal.Rptr. 788]; *People* v. *Superior Court (Pierson)* 274 Cal.App.2d 228, 232 [78 Cal. Rptr. 830]; *Thompson* v. *Superior Court,* 262 Cal.App.2d 98, 102-103 [68 Cal.Rptr. 530].)

We notice at the outset that the requirement of a written notice of motion, the necessity for a statement of grounds, and the practicalities of appellate review are interlocking matters. We believe that functional answers, at least, to attendant questions can be found in the background and terms of section 1538.5 itself. As enacted in 1967 (Stats. 1967, ch. 1537) the section was calculated to provide an orderly and complete scheme for pretrial determination of suppression motions and for appellate review of rulings on those motions. It specifies, as to each step in both felony and misdemeanor procedure, the times when such motions may be made, how they shall be heard and determined, the consequences of the trial court's ruling one way or the other, and the avenue for appellate review of the ruling at the behest of either the defendant or the People. (See Woodworth, *Outline of Procedure Upon Motion to Suppress,* 45 State Bar J. 218.) However, the section did not spell out the "numerous procedural rules applicable to our adversary theory of judicial proceedings" (*People* v. *Moore,* 13 Cal.App.3d 424, 433 [91 Cal.Rptr. 538]), and, specifically, it did not undertake to restate for its own purposes the law of evidence, of motion practice, or of appellate review.

With respect to the several suppression motions it authorizes (subds. (b), (f), (g), (h), and (i)), and with particular reference to the two motions to be determined at "special hearings" ((g), misdemeanors, (i), felonies), it is apparent that the section merely contemplated the applicability of generally prevailing motion practice. Motions were neither new nor foreign to criminal procedure. As Witkin has observed, absent certain statutory exceptions, motion procedure in criminal matters is similar to that in civil proceedings and this ordinarily entails a written notice speci-

fying the matters upon which the motion will be based and the grounds upon which it is made. (Witkin, Cal. Criminal Procedure, § 22; 4 Witkin, Cal. Procedure (2d ed. 1971) pp. 2679-2692.) By close analogy, motion practice as to the setting aside of indictments and informations (Pen. Code, §§ 995-999a) was well developed long before enactment of section 1538.5. (See *People* v. *Damazoni,* 65 Cal.App. 252, 254-255 [223 P. 1003].) Of course, the Legislature may not have foreseen the sometimes condoned use of the suppression motion as a "fishing expedition" which has only the effect of gratuitously passing onto the People the unintended procedural burden of justifying any and all police activity in the case.

In addition to the tacit assumption of accepted motion practice in section 1538.5, there was another procedural thread in that section's background. Before 1967, motions to exclude or suppress were often made at trial and equally often were made repeatedly. It was one of the purposes of the section to eliminate that practice and to substitute reviewable pretrial determinations. (*Cornelius* v. *Superior Court,* 25 Cal.App.3d 581 [102 Cal.Rptr. 59]; *Nerell* v. *Superior Court,* 20 Cal.App.3d 593 [97 Cal.Rptr. 702]; *People* v. *Werber,* 19 Cal.App.3d 598 [97 Cal.Rptr. 150].) Another important objective was to avoid the result of *People* v. *Valenti,* 49 Cal.2d 199, 208-209 [316 P.2d 633], where, because of the prohibition against double jeopardy, the People were without recourse to correct an erroneous suppression ruling made during trial.

In *People* v. *Moore, supra,* 13 Cal.App.3d 424, at pages 433-434, it was pointed out that there are certain similarities between *trial motions* to exclude or strike *and pretrial adversary hearings* limited to the issue of suppression. The hearing affords the defendant a much freer opportunity to contest the challenged evidence and this consideration, together with the procedural context in which such hearings occur, make it entirely reasonable for trial courts to insist upon the fundamental requirements of motion practice as to them. As to either constitutional substance or appellate review there should be no differences between the "special hearing" and the trial motion to exclude. As Wigmore said, long before the exclusionary rule came into vogue, "The initiative in excluding improper evidence is left entirely to the opponent,—so far at least as concerns his right to appeal on that ground to another tribunal." (1 Wigmore on Evidence (3d ed. 1940) § 18, p. 321.) (See also Evidence Code section 353 requiring any motion to exclude or strike to be "timely made" and "so stated as to make clear the specific ground of the objection or motion.") The court in *People* v. *Moore, supra,* in discussing practice before and apart from section 1538.5, gives numerous examples (including *Coy* v. *Superior Court,* 51 Cal.2d 471, 473 [334 P.2d 569]) in which an objec-

tion failed and appellate review was precluded by lack of specificity in the "motion."

It has been contended that Penal Code section 1538.5, subdivision (a) states that a search and seizure motion may be made upon "either of the following grounds" and then itemizes "(1) The search or seizure without a warrant was unreasonable," and "(2) The search or seizure with a warrant was unreasonable because [of five specified difficulties with the warrant]," and that either of these two "grounds" is all that need be specified. Such contention is fallacious. The manifest purpose of subdivision (a) was to simply delimit "search or seizure litigation" from other controversy that also may entail the exclusion of evidence and not to prescribe the specificity with which search and seizure motions must be made.

In combination with the foregoing untenable argument, reference is frequently made to the consideration that especially as to searches or seizures without a warrant, the "burden of proof" is upon the People to show justification, consent or the like. The resulting implication is that, upon the customary stipulation as to the absence of a search or arrest warrant, the burden devolves upon the People to array all police activity for scrutiny as to all imaginable, but previously unintimated, constitutional criticism. The problem is not much less with respect to warranted searches in that the defendant may merely suggest that "there was not probable cause for the issuance of the warrant" (Pen. Code, § 1538.5, subd. (a)(2)(iii)) in support of the demanded array. (Compare, however, *Theodor* v. *Superior Court*, 8 Cal.3d 77 [104 Cal.Rptr. 226, 501 P.2d 234]; *People* v. *Superior Court* (*Fall*) 31 Cal.App.3d 788 [107 Cal.Rptr. 756].) Section 1538.5 itself provides that its mechanics have nothing to do with either "the law relating to the burden of proof regarding the search or seizure" or "the law relating to the reasonableness of a search or seizure regardless of any warrant which may have been utilized." (Subd. (n)(iii) and (iv).) The section is equally even handed as to the burden or privilege of producing evidence on the motions it authorizes. (Subd. (c): ". . . the judge or magistrate shall receive evidence on any issue of fact necessary to determine the motion.")

While as a general rule of practice any moving party bears the burden of producing evidence, as well as the burden of persuasion, "suppression litigation" is unique in many respects. It seems plain that the intention behind section 1538.5 was to impose, by reference to long-standing criminal precepts and to motion practice generally, the procedural burdens borne by all moving parties and to leave the constitutional rules and attendant burdens of proof as they lay.

As a reason to deviate from formal, orderly "suppression procedure," it is sometimes said that since defendants never know the evidence that will be adduced against them, they cannot know which evidence to challenge, much less the grounds upon which to challenge it.

Of course, in the nature of things in the usual case, the person who has been the subject of a search or seizure, of arrest, and of criminal charges has some knowledge or at least well-founded suspicions about those matters. Criminal discovery, police reports, interviews, and the like can further that information. It seems a plain distortion of section 1538.5 to routinely require a full array of the People's evidence and its source as a discovery aid to a defendant in framing his constitutional contentions. The section itself provides rectification for justifiably missed opportunities at suppression motions. Subdivision (h) provides: "If, prior to the trial of a felony or misdemeanor, opportunity for this motion did not exist or the defendant was not aware of the grounds for the motion, the defendant shall have the right to make this motion during the course of trial in the municipal, justice or superior court." And, of course, this section does not preclude appeal following conviction (subd. (m)) and its interlocutory procedures, including appellate review, do not hamper the ultimate appeal (*People* v. *Medina*, 6 Cal.3d 484 [99 Cal.Rptr. 630, 492 P.2d 686]).

■ Although we totally agree with the appellate department that section 1538.5 as a whole contemplates usual motion practice, we cannot agree that the section imposes, of its own force, and as to motions in misdemeanor cases under subdivision (g), a requirement that such motions be *in writing* and be filed and served the usual period before the special hearing. There is a noticeable difference in the section's treatment of misdemeanor and felony cases. As to misdemeanors, subdivision (g) provides merely that "the motion shall be made in the municipal or justice court before trial and heard prior to trial." In contrast, in felony cases a motion to suppress may be made at the preliminary hearing (subd. (f)), a course which obviously does not lend itself to prior written notice of motion. However, to obtain the special hearing "de novo" in the superior court provided by subdivision (i), the motion must be made in such manner as to permit it to "be heard prior to trial and at least 10 days after notice to the people." Although the question of motions in felony cases is not before us, we do not perceive how the explicit requirement of subdivision (i) can be met without service of a written motion, a court order serving the same purpose, or a waiver on the part of the People.

Our conclusion is that while subdivision (i) requires service of a *written* motion, subdivision (g) does not do so.

However, as we have indicated, we do not think that the relatively formal requirements of a writing and prior filing and service ought to be confused with the more substantial requirement as to all suppression motions that they give a clear and specific indication of the evidence to be suppressed and the grounds for suppression.

In their oral arguments, but not in their briefs, these parties have mentioned the role of court rules, statewide and local, which generally govern the formalities of motion practice. We do not doubt that such rules, or procedural orders made in a given case, can be made to govern suppression motions since section 1538.5 speaks with reference to established motion practice, rather than providing a unique one of its own. We also do not doubt that antecedent formalities may be waived and that failure to object at the hearing effects such a waiver.

Thus, in this case, the People's objection was not to the lack of *written* notice or *prior* notice, but to the insufficiency of the notice, especially as to the grounds for suppression, when the motion was announced at the hearing. However, that insufficiency was at least largely overcome in this instance by the court's urging and announcement of the basis for its ruling and by the participation and argument of both counsel. Inasmuch as the motion was thus heard and determined, this appeal from the order of suppression is appropriate for determination.

Turning to the appellate department's question as to the standards to be used by appellate courts in passing upon suppression of evidence, we notice that there are no differences in the "standards" whether the motion is granted or denied, whether appellate review is sought by the defendant or the People, and whether review is by appeal or extraordinary petition. The plain objective of section 1538.5 was to create perfect reciprocity between the People and defendants in these respects. However, in the same way that the section did not spell out the formalities of motion practice, it did not undertake to specify or restate the precepts applicable to appellate review of trial courts' findings of fact and legal rulings.

The generally pertinent division of functions between the trial and appellate courts in "suppression litigation" has often been stated. (See, e.g., *People* v. *Levy,* 16 Cal.App.3d 327, 333-334 [94 Cal.Rptr. 25]; *People* v. *Superior Court* (*Thomas*) 9 Cal.App.3d 203, 209 [88 Cal.Rptr. 21].) As recently as *People* v. *Lawler,* 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621], our Supreme Court gave this formulation: "Our task . . . is to review the . . . ruling under appropriate standards of review.

" ' "A proceeding under section 1538.5 to suppress evidence is one in which a full hearing is held on the issues before the [trial] court

*sitting as a finder of fact."* [Citations omitted.]' (Italics added.) In such a proceeding the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence. The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution. Although that issue is a question of law, the trial court's conclusion on the point should not lightly be challenged by appeal or by petition for extraordinary writ. [Fn. omitted.] Of course, if such review is nevertheless sought, it becomes the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness."

Thus, given only substantial evidence to support them, the inferences and findings of the trial court are not a concern of the appellate courts. (E.g., *People* v. *West,* 3 Cal.3d 595 [91 Cal.Rptr. 385, 477 P.2d 409].) However, at least two overriding and connected considerations frequently arise to disturb the simplicity of this allocation of fact finding to the trial courts and the application of legal and constitutional standards to the appellate courts. First, there is the problem of distinguishing fact and law in various states of the record and in varying procedural configurations. Second, there is the necessity of preserving to the appellate courts their function of applying standards to the facts as found.

 The constitutional precept of "reasonableness" as to searches and seizures is not a "fact" which can be "found" or not found in any given case. Rather, it is a standard, a rule of law, external, objective and ubiquitous, to be applied to the facts of all cases. (*Terry* v. *Ohio,* 392 U.S. 1, 27 [20 L.Ed.2d 889, 909, 88 S.Ct. 1868]; *Irwin* v. *Superior Court,* 1 Cal.3d 423, 426-427 [82 Cal.Rptr. 484, 462 P.2d 12]; *People* v. *Bradford,* 28 Cal.App.3d 695, 700 [104 Cal.Rptr. 852]. Compare *People* v. *Miller,* 7 Cal.3d 219, 226-227 [101 Cal.Rptr. 860, 496 P.2d 1228]; *Agar* v. *Superior Court,* 21 Cal.App.3d 24, 28-29 [98 Cal.Rptr. 148].)

Admittedly, the refinements of the sub-standards of reasonableness are such as to create at least the illusion of "mixed questions of fact and law." Nonetheless, evidence, inference and fact must be segregated from standard and sub-standard if the respective provinces of the trial and appellate courts are to be maintained.

There is, of course, no requirement that a trial court's ruling on a suppression motion be accompanied by "findings" or even a statement of the

court's inference from the evidence, views as to the applicable law, or reasons for its ruling. (Compare practice as to dismissals under Pen. Code, § 1385; *People* v. *McAlonan,* 22 Cal.App.3d 982, 985-986 [99 Cal.Rptr. 733]; *People* v. *Ritchie,* 17 Cal.App.3d 1098, 1106 [95 Cal.Rptr. 462].) Nonetheless, providing both defendants and the People with meaningful appellate review of suppression rulings was the foremost purpose of section 1538.5. Before enactment of the section, the problem of review at the behest of the People was particularly acute. As has been observed: "The committee report makes it quite clear that the enactment of section 1538.5 was intended to provide a procedure by which the prosecution could seek appellate review, prior to trial, of an adverse decision on the admissibility of evidence excluded on Fourth Amendment grounds, in order to avoid the irrevocable consequences of an erroneous ruling suppressing evidence indispensable to a conviction, made after jeopardy had attached." (*Kirby* v. *Superior Court,* 8 Cal.App.3d 591, 596 [87 Cal.Rptr. 577].) The reference is to the report of the committee that recommended the measure. (22 Assem. Interim Com. Report No. 12, Criminal Procedure (1967) pp. 15-18.) That report also stated:

"[L]ack of adequate opportunity for appellate review can have an adverse effect upon the administration of criminal justice. If a lower court judge or magistrate erroneously rules that evidence must be excluded the result will probably be that the district attorney will lose a case he should have won and a person who should have been convicted will go free."

Although it is not possible to give definitive answers to the appellate department's question as to appellate standards for passing on suppression rulings, we recite several of the rules that have evolved from the appellate court's dealing with recurrent situations.

■ Initially, for a suppression ruling to be reviewable, the underlying objection, contention or theory must have been urged and determined in the trial court. (*Mesaris* v. *Superior Court,* 4 Cal.App.3d 976, 978 [85 Cal.Rptr. 124]; *People* v. *Carson,* 4 Cal.App.3d 782, 785-787 [84 Cal. Rptr. 699]; *People* v. *Moore, supra,* 13 Cal.App.3d pp. 424, 434.) As mentioned above, the burden is clearly upon the defendant, as moving party, to raise the issue of illegally obtained evidence. (See also *People* v. *Prewitt,* 52 Cal.2d 330, 335 [341 P.2d 1].) It has been held, however, that when a defendant raises an issue as to the illegality of an arrest or search, he makes "a prima facie case" when he establishes that an arrest or search was made without a warrant and that "the burden then rests upon the prosecution to show proper justification." (*Mestas* v. *Superior Court,* 7 Cal.3d 537, 540 [102 Cal.Rptr. 729, 498 P.2d 977] (search);

*Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23] (arrest).) (For the contrasting practice relative to searches or arrests pursuant to warrants, see *Theodor* v. *Superior Court, supra,* 8 Cal.3d 77; *People* v. *Superior Court (Fall) supra,* 31 Cal.App.3d 788; *People* v. *Tenney,* 25 Cal.App.3d 16 [101 Cal.Rptr. 419].) As a parallel to the requirement that a defendant state specific grounds for his suppression motion (discussed *supra*), the People have been held on appellate review to the particular "justification" or "theory" urged by them in the trial court. (*Lorenzana* v. *Superior Court,* 9 Cal.3d 626 [108 Cal.Rptr. 585, 511 P.2d 33]; *Mestas* v. *Superior Court, supra,* 7 Cal.3d 537, 542; *People* v. *Miller, supra,* 7 Cal.3d 219, 227; *People* v. *Superior Court (Simon)* 7 Cal.3d 186, 198-199 [101 Cal.Rptr. 837, 496 P.2d 1205]; *Reinert* v. *Superior Court,* 2 Cal.App.3d 36, 42 [82 Cal.Rptr. 263].)

As to the way in which the defendant's "grounds" or the People's "justification" should or must be raised in the trial court before a reviewable issue is presented, we have indicated that it is clearly preferable for the defendant's grounds to be set forth in his motion. In the nature of things, the People's theory or justification can be determined only from the evidence and argument offered. Even if the trial court has not insisted upon a formal statement of grounds, it is apparent that the scope of issues upon review must be limited to those raised during argument, whether that argument has been oral or in writing. This is an elemental matter of fairness in giving each of the parties an opportunity adequately to litigate the facts and inferences relating to the adverse party's contentions. (*People* v. *Tremayne, supra,* 20 Cal.App.3d 1006, 1013; *People* v. *Levy,* 16 Cal.App.3d 327, 335-336 [94 Cal.Rptr. 25]; *People* v. *Moore, supra,* 13 Cal.App.3d 424, 434; *People* v. *Wolder, supra,* 4 Cal.App.3d 984, 996.)

Returning from the scope of reviewable issues to the "standards" for review of those issues, we have noted that the appellate court function is limited to determining whether or not there is substantial evidence to support the ruling. No difficulty arises where the trial court's findings or basis for its ruling are made clear, are legally sustainable, and are supported by substantial evidence. However, as we have also noted, there is no express requirement that findings be made or that reasons for the ruling be stated. Problems result when the fact finding or resolution of issues is unclear, an erroneous ground or theory is relied upon, or the ground or theory is unsupported by the evidence.

Generally, the ruling of a trial court upon a motion implies a finding of fact favorable to the prevailing party on each ground or theory

underlying the motion. (6 Witkin, Cal. Procedure (2d ed. 1971) pp. 4215-4218.) The implication applies specifically to rulings admitting or excluding evidence. (Evid. Code, § 402, subd. (c); *City & County of San Francisco* v. *Western Air Lines, Inc.,* 204 Cal.App.2d 105, 148 [22 Cal.Rptr. 216].) The rule, however, has many recognized exceptions. (6 Witkin, Cal. Procedure (2d ed. 1971) pp. 4219-4220.)

If none of the exceptions pertain, the simplest application of the rule is to imply findings to support the ruling if any ground of suppression or theory of justification is urged and is substantiated by the evidence. However, it is important to note that in all cases the presumption is as to supporting inferences and facts, not as to the application of constitutional standards or sub-standards of reasonableness. The latter is a question of law which must be resolvable by the appellate court upon the record or the matter must be remanded for further clarifying proceedings.[1]

Some of the recognized exceptions to the presumption of implied findings to support the ruling that appear relevant to the case at bar are as follows:

1. *Uncontested Facts.* When litigating an issue of search, seizure or

---

[1]Perhaps the most frequently recurring situation and best example in which the distinction between fact and law and the application of so-called "institutionalized" sub-standards becomes important is in cases involving a claimed consensual search. Cases involving the application of Penal Code sections 1531 and 844 probably run a close second. Of course, the ultimate standard of reasonableness is satisfied where a search is conducted pursuant to a vaild consent. When the evidence is in conflict as to the words used and the circumstances under which the consent was given, the solution of the factual dispute is the province of the trial court (*People* v. *West, supra,* 3 Cal.3d 595), and while courts often state that the question of the voluntariness of a consent is a question of fact to be decided in the light of all the circumstances, the various holdings clearly reveal that the application of the legal standards to the found facts which determines the validity of the consent is in reality a question of law. (See *People* v. *Duren,* 9 Cal.3d 218 [107 Cal.Rptr. 157, 507 P.2d 1365]; *United States* v. *Rothberg,* 460 F.2d 223.)

Examples of the so-called "institutionalized sub-standards" involved in consensual searches are that (1) the fact that a suspect is in custody does not render a consent involuntary (*People* v. *Robinson,* 149 Cal.App.2d 282 [308 P.2d 461]), (2) an illegal arrest or detention will render invalid a consent given during the course of such detention (*People* v. *Moore,* 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800]), and (3) an officer's statement to a suspect that he intends to do what he has a legal right to do is not a coercive threat that will render invalid a consent given in response thereto. (*People* v. *Rupar,* 244 Cal.App.2d 292 [53 Cal.Rptr. 70]; *People* v. *Ward,* 27 Cal.App.3d 218 [103 Cal.Rptr. 671].)

Similarly, the sub-standard of compliance with Penal Code section 844 or section 1531 is part of the ultimate standard of reasonableness. The issue of whether there was compliance or circumstances excusing compliance in any given case may turn on a resolution of conflicting facts. If there is no conflict or if the trial court resolves a conflict which does exist, then the determination of whether under the facts there was compliance or excuse therefrom is a question of law. (*People* v. *Superior Court (Fall) supra,* 31 Cal.App.3d 788.)

arrest, the parties often do not dispute the testimony, but argue nonetheless that the conduct was lawful or unlawful. In such cases, the appellate courts have said the trial court "resolved no conflicts in the evidence since there were none, nor was it required to draw any inferences. Its determination was made strictly as a matter of law, and not of fact or of mixed law and fact. We [may] disagree with its legal conclusion, . . ." (*People* v. *Leighter*, 15 Cal.App.3d 389, 396 [93 Cal.Rptr. 136].) Other decisions to the same effect include *People* v. *Bradford*, 28 Cal.App.3d 695, 700 [104 Cal.Rptr. 852]; *People* v. *Superior Court* (*Mahle*) 3 Cal.App.3d 476, 488 [83 Cal. Rptr. 771]; and *People* v. *Armenta*, 268 Cal.App.2d 248, 251 [73 Cal. Rptr. 819].

2. *Facts or Inferences Resolved in Favor of the Losing Party.* Even when the facts are in dispute the trial court may indicate that although it finds the facts or certain facts in favor of one of the parties, it still must rule against that party. The most common instances are ones in which the court indicates that it credits certain testimony, very often that of peace officers. In such cases the appellate court cannot presume that the facts were resolved against the People or that, contrary to its own indication, it disbelieved the testimony. (See, e.g., *People* v. *Superior Court* (*Johnson*) 15 Cal.App.3d 146, 151 [92 Cal.Rptr. 916]; *People* v. *Superior Court* (*Thomas*) *supra*, 9 Cal.App.3d 203, 210-211.)

3. *Exclusive Reliance Upon an Erroneous Rule or Theory.* ■ As still another variation to the exceptions to the presumption of supportive implied findings, a trial court's determination will not be sustained under the general rule where it appears that its decision was based upon an erroneous legal theory absent which it is unlikely that it would have reached the conclusion it did. (*People* v. *Kanos*, 70 Cal.2d 381, 385 [74 Cal.Rptr. 902, 450 P.2d 278]; *People* v. *Van Gorden*, 226 Cal.App.2d 634, 638, 640 [38 Cal.Rptr. 265].)

4. *Findings Not Supported by Evidence.* Lastly, in keeping with the rule that the appellate function is to ascertain whether a suppression ruling is supported by substantial evidence, it goes without saying that such a ruling cannot be upheld if it is not supported by substantial evidence or any evidence. (E.g., *People* v. *Superior Court* (*York*) 3 Cal.App.3d 648, 659-660 [83 Cal.Rptr. 732].)

■ Finally, we turn to brief application of all the foregoing rules, precepts, presumptions and exceptions to this suppression motion as it was determined in the municipal court. Only the arresting officer testified. It is apparent from the record that the trial court believed the testimony as given and had no question as to the officer's credibility. Moreover, no

issue was raised by the defendant as to the officer's credibility or testimony.

It is also apparent from the record that the trial court believed that the officer did, in fact, approach the automobile for the purpose of investigating as to a person slumped over in the back seat as if unconscious. It is equally clear that, under the circumstances, the court perceived no constitutional problem of reasonableness in the officer's doing so.[2] Again, the defendant raised no issue in this connection.

It is also plain that the court believed that the officer initially asked defendant through an open front window if he was "Okay," "Sick" or "All right," and saw no constitutional infirmity in the making of that inquiry. Still again, the defendant raised no issue as to events up to that point. With the defendant's supposed reply, however, problems as to both fact finding and theory arose. The transcript is clear that the defendant "mumbled something" that the officer could not understand and that the officer then asked him to exit the vehicle. The defendant again "mumbled something" and the officer opened the front door and the defendant pushed the right front seat forward and got out. The court, however, made repeated references to a mythical reply by defendant that he was "Okay" or "All right." At this point also, defendant, in argument and cross-examination, raised his first issues, namely, the factual one (which proved to be no issue at all) as to the nature of defendant's reply, and the legal one whether the officer was privileged to ask or order the defendant to exit the vehicle whatever the nature of his reply.

Turning briefly to the decisional law as to these issues, and ignoring those many decisions that have approved ordering occupants from vehicles to investigate suspects or to enhance the officer's safety (e.g., *People* v. *Mickelson,* 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Knight,* 20 Cal.App.3d 45 [97 Cal.Rptr. 413]), decisions have forthrightly approved such requests or orders where the officer was merely justified in inquiring into the condition of the person in the vehicle. That is to say, the request to exit has been approved where the officer made no

---

[2]Accord, *People* v. *Superior Court* (*Poole*) 267 Cal.App.2d 363, 365 [72 Cal. Rptr. 868]: "It is certainly proper for police officers to investigate cases of persons sleeping in automobiles on public streets. This is so even though such conduct in and of itself is not unlawful. First, the officer does not know at the time of such investigation what the condition of the person may be. True, he could be asleep, but he might be drunk and unable to take care of himself, or he might be under the influence of narcotics and unable to take care of himself and the officer in making his investigation is doing so in order to protect the individual involved and also the general public." See also *Mardis* v. *Superior Court,* 218 Cal.App.2d 70 [32 Cal.Rptr. 263]; *People* v. *Pearsall,* 216 Cal.App.2d 196 [32 Cal.Rptr. 777].

preliminary attempt at inquiry or interrogation. (See *People* v. *Superior Court* (*Poole*) *supra,* 267 Cal.App.2d 363, 365;[3] *People* v. *Pearsall, supra,* 216 Cal.App.2d 196; cf. *Barber* v. *Superior Court,* 30 Cal.App.3d 326 [106 Cal.Rptr. 304].) Manifestly, where such an attempt is made and is frustrated, it is reasonable for the officer to request the person to alight in order to ascertain his condition or to engage him, if possible, in intelligible conversation.

The theory of the municipal court appears to have been an adaptation of those decisions which, in other contexts, have indicated that when the purpose of an inquiry or detention has been achieved, it ought to cease. (E.g., *Pendergraft* v. *Superior Court,* 15 Cal.App.3d 237, 242-243 [93 Cal.Rptr. 155].) However, the corollary in those decisions is that until such purpose is accomplished, the inquiry need not terminate. In this instance there is not a scintilla of evidence that he was "All right" or that the officer concluded that he was or should have done so. (Compare *Barber* v. *Superior Court, supra,* 30 Cal.App.3d 326, 328, where "The officer asked if everything was all right; Barber said it was. Nothing indicated otherwise.")

On defendant's alighting, the capsules were in plain sight and their sighting did not constitute a search of any kind (*Harris* v. *United States,* 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992]; *People* v. *Terry,* 70 Cal.2d 410, 428 [77 Cal.Rptr. 460, 454 P.2d 36].)

It is apparent that the suppression order was based upon either a ground wholly unsupported by evidence or upon an erroneous application of constitutional standards. In neither case is the ruling entitled to a presumption of implied findings in support nor in either case is this court bound by the ruling.

The suppression order is reversed, and, accordingly, the order dismissing the complaint is also reversed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied August 8, 1973, and respondent's petition for a hearing by the Supreme Court was denied October 10, 1973.

---

[3]"It certainly is not improper or onerous to ask an individual to step out of an automobile in order to fully determine why or under what circumstances a person may have been asleep in an automobile parked on a public street. Such conduct has been upheld [in *People* v. *Pearsall, supra*] where . . . an officer saw the defendant sitting in the left front part of an automobile which was parked in front of a bar and apparently the defendant was asleep. The officer aroused the defendant by tapping on the car window and then asked him to step to the sidewalk."