[No. G033762. Fourth Dist., Div. Three. Jan. 4, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
MASON G. MILLER, Defendant and Appellant.

## COUNSEL

David K. Rankin, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton, Charles C. Ragland and Garry Haehnle, Deputy Attorneys General, for Plaintiff and Respondent.

Oᴘɪɴɪᴏɴ

**MOORE, J.**—This is an appeal from the trial court's denial of defendant's motion to suppress evidence pursuant to Penal Code section 1538.5. At the suppression hearing, the prosecution conceded defendant was detained without a warrant, probable cause, or reasonable suspicion. Its opposition was confined to the argument that the search was valid because of defendant's probation status, which was unknown to law enforcement at the time of the detention.

The trial court denied the motion, and given the developments in the law on this subject, we reversed, holding that because the prosecution had conceded the initial stop was not reasonable, a further hearing in the trial court was unwarranted. Respondent sought review and the California Supreme Court granted review but held the matter pending its decision in another case.

That case was *People v. Moore* (2006) 39 Cal.4th 168 [45 Cal.Rptr.3d 784, 137 P.3d 959] (*Moore*), and the Supreme Court has ordered us to reconsider this case in light of that opinion. Because the facts of this case are significantly different than those in *Moore*, we find that remand to the trial court for further proceedings is unwarranted. The trial court's order denying defendant's motion is reversed.

I

FACTS

We briefly restate the facts. Defendant was on probation on the night of October 20, 2003. At approximately 3:30 a.m., Orange County Deputy Sheriff Bradford Kenneally observed defendant's vehicle exiting the parking lot of a church. He knew the church had no activity going on at that hour of the morning, and he also knew the parking lot was dark and secluded. He initiated a traffic stop.

Kenneally asked defendant, who was driving, whether he had a driver's license, and defendant told him his license had been suspended. He stated he was driving because the passenger, Holly Hampton, to whom the car was registered, had had too much to drink. Defendant and Hampton were detained while a records check was conducted. The records check revealed that defendant did not have a driver's license and that he had consented to

searches as a condition of his probation. Kenneally asked defendant to step out of the car and for consent to search his person and the vehicle, which defendant granted.

In defendant's front pocket, the deputy found 52 small, clear plastic bags with red markings, and $151. In the car, he found a used glass pipe, which he recognized as the type used for smoking methamphetamine. He also found approximately half a gram of marijuana, and approximately eight grams of a crystal substance which Kenneally believed to be a form of methamphetamine.

The deputy advised defendant of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]. Defendant stated the marijuana and methamphetamine were his. Ultimately, Kenneally determined Hampton was able to drive and allowed her to leave.

Defendant was charged with three counts relating to possession of drugs for sale and drug paraphernalia, and driving without a valid license. The information also alleged prior felony drug convictions. Defendant moved to suppress evidence pursuant to Penal Code section 1538.5 on the grounds that despite defendant's probation status and consent, the initial detention was unlawful. Defendant argued that observing his car in the church parking lot did not create the reasonable suspicion necessary to justify the initial stop.

The district attorney, in its opposition, conceded that the detention "was conducted without a warrant, without probable cause and without reasonable suspicion." Nonetheless, the prosecution contended the search was valid because of defendant's probation condition. The district attorney relied on *People v. Viers* (1991) 1 Cal.App.4th 990 [2 Cal.Rptr.2d 667], which held that advance knowledge by a law enforcement officer of a defendant's waiver of his Fourth Amendment's protections was not necessary to justify a detention and search. (*People v. Viers, supra,* 1 Cal.App.4th at pp. 993–994.) In his reply brief, defendant argued that the police could not use a search condition it was unaware of to justify an otherwise unreasonable stop. (See *People v. Sanders* (2003) 31 Cal.4th 318, 330 [2 Cal.Rptr.3d 630, 73 P.3d 496] (*Sanders*).)

The motion to suppress was denied and defendant pled guilty. He was sentenced to two years in state prison. He filed an appeal on the denial of his suppression motion.

On appeal, defendant again relied on *Sanders*, arguing that a police officer who was unaware of a defendant's probation search condition at the time of the initial detention could not rely on it to justify an otherwise unreasonable detention. The Attorney General argued the search was valid because it was not arbitrary, capricious, or harassing and that knowledge of defendant's probation condition was not required. While defendant's appeal was pending, this court decided *Myers v. Superior Court* (2004) 124 Cal.App.4th 1247 [22 Cal.Rptr.3d 369] (*Myers*). *Myers* held that a police officer must be aware of a defendant's Fourth Amendment waiver prior to conducting a warrantless search. (124 Cal.App.4th at p. 1255.)

At oral argument, in light of *Myers*, respondent argued that the district attorney reasonably relied on the state of the law at the time and urged us to remand for a full suppression hearing. We asked for further briefing on the legal effect, if any, of the concession below and whether a suppression hearing was appropriate. Ultimately, we agreed with defendant that the concession constituted a waiver of the issue of whether the initial stop was justified.

Respondent sought review and the California Supreme Court issued a "grant and hold" order pending its decision in *Moore*, thereby depublishing the original opinion. After the Supreme Court issued its opinion in *Moore, supra,* 39 Cal.4th 168, it ordered this court to vacate its initial opinion and reconsider the case in light of *Moore*. (Supreme Ct. Mins. for Nov. 1, 2006, S135231.) We ordered our initial opinion vacated on November 13, 2006, and reconsider the case as ordered.[1]

II

DISCUSSION

In *Moore, supra,* 39 Cal.4th 168, the California Supreme Court agreed that police must be aware of a search condition to justify relying on it to conduct a search. This was consistent with prior rulings by both the Supreme Court and appellate courts. (*Sanders, supra,* 31 Cal.4th at p. 330; *Myers, supra,* 124 Cal.App.4th 1247.) The Supreme Court has since decided *In re Jaime P.* (2006) 40 Cal.4th 128 [51 Cal.Rptr.3d 430]), holding that the same standard applies to juvenile probationers.

---

[1] Defendant filed a supplemental brief shortly after the Supreme Court's order. We did not receive a supplemental brief from respondent or a request for an extension.

*Moore* is less about the correct rule of law than it is about the appropriate remedy. In *Moore*, a police officer encountered the defendant on the street, and the defendant was later taken to the hospital by ambulance. After the defendant was sedated, doctors removed several objects from his mouth, including one that later proved to be a plastic-wrapped piece of cocaine. The preliminary hearing transcript revealed little more in the way of facts, but the prosecution produced a copy of the defendant's parole terms, which included warrantless searches. The trial court denied the suppression motion. (*Moore, supra,* 39 Cal.4th at p. 172.)

*Sanders* was decided during the pendency of the defendant's appeal, and the Court of Appeal reversed outright. (*Moore, supra,* 39 Cal.4th at p. 172.) The majority of the court found the preliminary hearing transcript did not reveal the nature of the encounter between the officer and the defendant, and they could not determine from the transcript whether the search had been conducted pursuant to a lawful arrest, or whether the officer knew of the defendant's parolee status. The dissent pointed out that both sides had acted in reliance on the state of the law at the time, and even the defendant believed remand for a new hearing was a fair outcome. (*Id.* at pp. 172–173.)

Thus, the question before the Supreme Court was whether reversal or remand for a new hearing was the appropriate remedy. (*Moore, supra,* 39 Cal.4th at p. 173.) The court held that remand was appropriate under the facts of the case. "Because the suppression hearing occurred before we decided *Sanders, supra,* 31 Cal.4th 318, the trial court and the parties acted with the understanding that they were not required to present evidence whether the officers knew of defendant's parole search condition. In that situation, where the parties understandably did not present arguments and evidence relating to search issues, a reviewing court should remand to the trial court to consider any alternate grounds for or against suppression. [Citation.]" (*Moore, supra,* 39 Cal.4th at p. 174.)

This case is different. In *Moore*, it was unclear whether there was an arrest that would have justified the search, or whether the officer knew of the probation condition. The details of the encounter were vague. (*Moore, supra,* 39 Cal.4th at p. 172.) In this case, we have a preliminary hearing transcript that gives a detailed description of the encounter. The transcript reveals that the deputy was unaware of the parole search condition. After answering questions relating to the conditions under which the officer saw defendant's car leave the parking lot, he was asked: "And you stopped it exclusively for this reason; correct?" Answer: "Yes." "Because you were suspicious that maybe something was going on; correct?" "Yes, Sir."

■ The deputy's responses foreclose any possibility that he stopped the car for any reason other than the circumstances relating to the hour and the deserted nature of the parking lot. Further, it is difficult to envision how the officer could possibly have known of defendant's probation status prior to the stop. The car was not registered to defendant, but to Hampton. Even if he had run the license plates before detaining the car (which he did not), defendant's name and status would not have been revealed. Thus, based on his own testimony and the logical inferences therefrom, the deputy did not and could not have known of defendant's status prior to the stop. Thus, remanding for a further suppression hearing would not reveal additional pertinent details on the question of why the deputy stopped the car or whether he was aware of defendant's probation status.

The only reason for granting a further suppression hearing would be to allow the prosecution to further develop facts that would justify a conclusion the deputy had reasonable suspicion to stop the car. The preliminary hearing transcript, as quoted above, forecloses the possibility that other facts exist, however. The deputy agreed that the presence of the car in the dark parking lot late at night was the exclusive reason he initiated the stop. The prosecution cannot now attempt to elicit additional facts to support a different theory when its witness has already testified there are none.

■ Moreover, unlike the situation in the trial court in *Moore*, the prosecution in this case actively conceded the question of whether the stop was permissible without the existence of the search condition. "The People concede the detention of defendant on October 20, 2003, which led to the evidence he now seeks to suppress, was conducted without a warrant, without probable cause, and without reasonable suspicion." Relying on the probation consent to search was the prosecution's conscious decision, and it would be plainly unfair to allow it to relitigate the issue. (See *People v. Manning* (1973) 33 Cal.App.3d 586, 601 [109 Cal.Rptr. 531] ["[T]he scope of issues upon review must be limited to those raised during argument, whether that argument has been oral or in writing. This is an elemental matter of fairness in giving each of the parties an opportunity adequately to litigate the facts and inferences relating to the adverse party's contentions."].)

The prosecution made the decision to rely solely on the probation search of its own volition. (Cf. *People v. Lazalde* (2004) 120 Cal.App.4th 858 [15 Cal.Rptr.3d 904] [case remanded for full hearing after *Sanders* because prosecution's reliance on prior law prevented defendant from litigating validity of search warrant].) The prosecution could have pursued both arguments simultaneously, yet it made the conscious decision to concede that without the probation search condition, the stop was not reasonable. Fairness dictates the prosecution accept the consequences of its decision.

## III

## DISPOSITION

The judgment is reversed.

Rylaarsdam, Acting P. J., and Fybel, J., concurred.