BAMATTRE-MANOUKIAN, ACTING P.J.
*79 I. INTRODUCTION
After the trial court denied his motion to suppress evidence ( Pen. Code, § 1538.5 ), defendant Irvin Sacrite pleaded no contest to possession of methamphetamine ( Health & Saf. Code, § 11377, subd. (a) ; count 1) and using or being under the influence of a controlled substance ( Health & Saf. Code, § 11550, subd. (a) ; count 2), both misdemeanors.[1] The trial court placed defendant on probation for two years.
On appeal, defendant contends the trial court erred by denying his motion to suppress *765 evidence, claiming the officer was not justified in conducting a pat search. Defendant further contends the officer had no grounds for removing anything from defendant's pocket after the pat search and prior to his arrest.
Our careful review of the record shows that prior to conducting the pat search, the officer observed "bulges" in defendant's pocket that included "something solid," suggesting that defendant was armed. The officer conducted a pat search because he suspected that the bulge might be a weapon and he would not be able to see defendant's hands while investigating whether defendant was under the influence of a controlled substance. (See *80 Pennsylvania v. Mimms (1977) 434 U.S. 106, 107, 98 S.Ct. 330, 54 L.Ed.2d 331 ( Mimms ) [pat search justified where officer "[f]ear[ed] that the bulge might be a weapon"].) On this record, we conclude that there were "specific and articulable facts" that would have led a reasonable officer "reasonably to conclude in light of his [or her] experience" that defendant "may be armed and presently dangerous." ( Terry v. Ohio (1968) 392 U.S. 1, 21, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 ( Terry ).) We also find that the record does not support defendant's claim that the officer removed items from defendant's pocket prior to his arrest. Therefore, we will affirm the order of probation.
II. BACKGROUND
A. Evidence at the Motion to Suppress
At about 4:00 p.m. on April 16, 2014, San Jose Police Officer John Prim was on duty, in an unmarked police car, with his partner. They were working in an area in which they had conducted prior "clandestine operations" and had made prior arrests.
Officer Prim noticed defendant riding a bike "the wrong way into traffic," in violation of Vehicle Code section 21650.1. Defendant was also carrying and drinking from an open red Budweiser beer can, in violation of San Jose Municipal Code section 10.12.010.
Officer Prim followed defendant and detained him on North Second Street. He began talking to defendant "regarding the aluminum can," and he took the can from defendant, smelled it, and looked inside. He determined that the can contained beer.
During the detention, Officer Prim noticed signs suggesting that defendant was under the influence of a controlled substance: he was sweating heavily; he had dried, chapped lips; and he had "fluttering eyelids." Officer Prim intended to cite defendant for the Vehicle Code violation as well as the Municipal Code violation, and he wanted to stand closer to defendant to continue investigating whether defendant was under the influence of a stimulant. However, Officer Prim felt he could not "safely do that" if defendant had "any weapons in his immediate area of his hands." Defendant was taller and weighed more than the two officers: defendant was about six feet, three inches tall and weighed about 210 pounds; Officer Prim was five feet, ten inches tall and weighed about 190 pounds; and Officer Prim's partner was five feet, six inches tall and weighed about 160 pounds.
Defendant was wearing a t-shirt, which "extended beyond his waistband area," so Officer Prim could not see defendant's waistband area. The t-shirt *81 also partially covered the pockets of defendant's shorts. Officer Prim could see "bulges" inside defendant's shorts pockets. He could tell there was "something solid" with round edges, "similar [to the] shape of a cellular phone." Officer Prim "couldn't quite determine" *766 what the object actually was. Based on his "training and experience" as well as his personal safety, he "wanted to conduct a quick pat search to advise if it was a weapon or a potential weapon." From what he had observed, Officer Prim could not "exclude the possibility that what defendant had in his pockets were concealed weapons." Officer Prim would not be able to observe defendant's hands during some of the tests he planned to administer to determine whether defendant was under the influence of a stimulant.
Officer Prim conducted a pat search, which gave him "a better idea" of what defendant had in his pockets: he detected that the bulges were "a possible cell phone and a possible lighter." He did not remove anything from defendant's pockets at that time. He next conducted a Romberg test,[2] observed further indications that defendant was under the influence, and arrested defendant. Officer Prim then reached into defendant's right front pocket-where he had observed the bulges-and removed a cell phone, lighter, and plastic baggie containing methamphetamine. Officer Prim also removed a wallet from defendant's back pocket.
On cross-examination, Officer Prim acknowledged that at the preliminary hearing, he had testified to the following order of events: detention, pat search, observation of symptoms of stimulant use, arrest, and search incident to arrest. However, during the hearing on the motion to suppress, Officer Prim clarified that it was during the detention that he had first observed signs suggesting that defendant was under the influence of a stimulant.
B. Charges and Motion to Suppress
Following a preliminary hearing, defendant was charged with felony possession of methamphetamine ( Health & Saf. Code, § 11377, subd. (a) ; count 1) and misdemeanor using or being under the influence of a controlled substance ( Health & Saf. Code, § 11550, subd. (a) ; count 2).
Defendant moved to suppress evidence pursuant to Penal Code section 1538.5. He asserted that the prosecution had the burden to justify the detention. (See People v. Williams (1999) 20 Cal.4th 119, 130, 83 Cal.Rptr.2d 275, 973 P.2d 52.)
*82 The People opposed the motion to suppress, arguing that the detention was supported by reasonable suspicion, that it was not unduly prolonged, that the pat search was justified, that there was probable cause to arrest defendant, and that the methamphetamine was removed from defendant's pocket during a lawful search incident to arrest. With respect to the pat search, the People argued that Officer Prim reasonably suspected that defendant had a weapon in his pocket.
Defendant subsequently filed a "supplemental" motion to suppress. Defendant focused solely on the pat search, arguing that there were no "specific and articulable facts to support a suspicion that [he] was armed and presently dangerous."
After a hearing at which Officer Prim testified, defendant argued that the initial pat search was not justified by a reasonable suspicion that defendant was armed and dangerous.
The prosecutor argued that the search was justified by Officer Prim's observation of a bulge from a solid object in defendant's pocket, the obstruction of defendant's waistband area by his long t-shirt, the signs of "potential stimulant use," the *767 fact that the officer would not be able to see defendant's hands during further investigation, and the fact that the officers were "comparatively substantially smaller" than defendant.
The trial court denied defendant's motion to suppress. The trial court found Officer Prim's testimony "to be credible." The trial court noted that Officer Prim was "going to conduct a further investigation regarding whether the defendant was under the influence," but "would not be able to see his hands." Officer Prim was "concerned about officer safety and concerned specifically because of the bulge in the defendant's pocket." The trial court found that although the bulge "turned out to be a cell phone and a lighter combined," it could have been "a weapon, either a small gun or a knife by the shape and the size." The trial court referenced two cases that had upheld pat searches conducted after an officer saw "bulges in the front of the waistband." (See Mimms, supra, 434 U.S. at p. 107, 98 S.Ct. 330 ; People v. Snyder (1992) 11 Cal.App.4th 389, 393, 13 Cal.Rptr.2d 837.) The trial court did not find it relevant that "the defendant was larger than the two officers" but concluded that "there was reasonable suspicion."
C. Pleas and Sentencing
After Proposition 47 was passed in November 2014, the information was amended to charge count 1 (possession of methamphetamine; Health & Saf. Code, § 11377, subd. (a) ) as a misdemeanor. Defendant pleaded no contest to *83 that count and to count 2 (using or being under the influence of a controlled substance; Health & Saf. Code, § 11550, subd. (a) ).
The trial court suspended imposition of sentence and placed defendant on court probation for two years with a 30-day jail term.
III. DISCUSSION
Defendant contends the trial court erred by denying his motion to suppress evidence because Officer Prim was not justified in conducting a pat search. Defendant further argues that even if the pat search was justified, Officer Prim "acted unlawfully" when he removed the cell phone, lighter, and baggie of methamphetamine from defendant's pocket.
A. Standard of Review
"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]" ( People v. Ramos (2004) 34 Cal.4th 494, 505, 21 Cal.Rptr.3d 575, 101 P.3d 478.)
B. The Pat Search
We first address defendant's claim that the pat search was unlawful.
In Terry, supra, 392 U.S. 1, 88 S.Ct. 1868, the United States Supreme Court held that the Constitution permits "a reasonable search for weapons for the protection of the police officer, where he [or she] has reason to believe that he [or she] is dealing with an armed and dangerous individual." ( Id. at p. 27, 88 S.Ct. 1868.) Before conducting a pat search, "[t]he officer need not be absolutely certain that the individual is armed." ( Ibid. ) A pat search may be conducted where an officer's observations lead the officer "reasonably to conclude in light of his [or her] experience that ... the persons with whom he [or *768 she] is dealing may be armed and presently dangerous." ( Id. at p. 30, 88 S.Ct. 1868.) "[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the search. ( Id. at p. 21, 88 S.Ct. 1868.)
"The judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety. The lives and safety *84 of police officers weigh heavily in the balance of competing Fourth Amendment considerations. [Citations.]" ( People v. Dickey (1994) 21 Cal.App.4th 952, 957, 27 Cal.Rptr.2d 44 ( Dickey ).) The Fourth Amendment has never been interpreted to " 'require that police officers take unnecessary risks in the performance of their duties.' " ( Mimms, supra, 434 U.S. at p. 110, 98 S.Ct. 330.)
Defendant argues that Officer Prim had no "reasonable basis to believe the bulge [in defendant's pocket] was a weapon, having described the bulge as shaped like a cell phone, an item that many people carry in their pockets."
As defendant acknowledges, pat searches have been upheld in other cases where an officer saw a bulge in the defendant's clothing. For instance, in Mimms, the United States Supreme Court found a pat search justified based on an officer's observation of "a large bulge" under the defendant's jacket. ( Mimms, supra, 434 U.S. at p. 107, 98 S.Ct. 330.) The officer "[f]ear[ed] that the bulge might be a weapon." ( Ibid. ) The court found "little question the officer was justified" in conducting a pat search, explaining, "The bulge in the jacket permitted the officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer." ( Id. at p. 112, 98 S.Ct. 330.)
Defendant asserts that because the bulge in his pocket was "shaped like a cell phone," Officer Prim had no reason to believe defendant was armed. However, the bulges were not just from a cell phone but from a cell phone, lighter, and baggie of methamphetamine. As the trial court in this case observed, weapons come in many shapes and sizes. Moreover, Officer Prim did not testify that the solid object appeared to be a cell phone but merely that he observed "something solid" with round edges, "similar [to the] shape of a cellular phone." Officer Prim "couldn't quite determine" what the object actually was, and he could not "exclude the possibility that what defendant had in his pockets were concealed weapons." The gist of this testimony was that Officer Prim suspected that the bulge might be a weapon. (See Mimms, supra, 434 U.S. at p. 107, 98 S.Ct. 330 [officer "[f]ear[ed] that the bulge might be a weapon"].)
As established by Terry, an officer "need not be absolutely certain that the individual is armed" before conducting a pat search. ( Terry, supra, 392 U.S. at p. 27, 88 S.Ct. 1868.) The officer in Mimms did not testify that he believed the bulge in the defendant's pocket to actually be a weapon. The officer in Mimms merely "[f]ear[ed] that the bulge might be a weapon." ( Mimms, supra, 434 U.S. at p. 107, 98 S.Ct. 330.) Likewise, U.S. v. Chaney (1st Cir. 2009) 584 F.3d 20 ( Chaney ) upheld a pat search conducted after the officer "observed a significant bulge, about the size of a fist, in the right front pocket of [the defendant's] jeans" and became "concerned that the bulge might be a weapon." ( Id. at p. 23 ; see *85 id . at p. 26.) The defendant had also been evasive in response to questioning about his identity and "what was in his pocket." ( Id. at p. 27.) That evasiveness, "coupled with the size and rigid nature of the object, gave [the officer] a specific articulable basis for suspecting that Chaney might be armed, thereby justifying a pat-down search." ( Ibid. ) *769 The testimony of the officers in both Mimms and Chaney is similar to Officer Prim's testimony that he "couldn't quite determine" what the solid object in defendant's pocket was and thus "wanted to conduct a quick pat search to advise if it was a weapon or a potential weapon." The essence of this testimony was that Officer Prim suspected that the bulge might be a weapon. (See Mimms, supra, 434 U.S. at p. 107, 98 S.Ct. 330 [officer "[f]ear[ed] that the bulge might be a weapon"]; Chaney, supra, 584 F.3d at p. 23 [officer was "concerned that the bulge might be a weapon"].) As in both Mimms and Chaney , the objective facts supported Officer Prim's suspicion, since the bulges included "something solid" that, based on his "training and experience," made him concerned that the object could be "a weapon or a potential weapon."
Because the bulges in defendant's pocket provided "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed]" the pat search ( Terry, supra, 392 U.S. at p. 21, 88 S.Ct. 1868 ), the instant case is distinguishable from Dickey , in which a deputy testified "that he performed the patdown search for 'officer safety' " but provided no " 'specific and articulable' facts" indicating that the defendant might be armed and dangerous. ( Dickey, supra, 21 Cal.App.4th at p. 956, 27 Cal.Rptr.2d 44.) Unlike in this case, the deputy in Dickey did not observe any bulges in the defendant's pockets.
In this case, after defendant was detained based on Vehicle Code and Municipal Code violations, Officer Prim observed signs indicating that defendant was under the influence of a stimulant. He intended to conduct a further investigation into whether defendant was under the influence, during which defendant's hands would be out of the officer's view. Officer Prim also observed bulges in defendant's pocket that included "something solid." Officer Prim suspected that the bulges might be a weapon. (See Mimms, supra, 434 U.S. at p. 107, 98 S.Ct. 330.) Officer Prim's testimony thus pointed to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed]" the brief pat search for weapons ( Terry, supra, 392 U.S. at p. 21, 88 S.Ct. 1868 ) prior to conducting the further investigation that required him to be in close proximity to defendant.
C. Removal of Items from Defendant's Pocket
We next address defendant's claim that there was no justification to remove items from defendant's pocket right after the pat search.
*86 "[I]n searching a legally detained individual reasonably suspected of being armed, a police officer must be limited to 'a careful exploration of the outer surfaces of [the] person's clothing' [citation] until and unless he discovers specific and articulable facts reasonably supporting his suspicion. Only then may an officer exceed the scope of a patdown and reach into the suspect's clothing for the limited purpose of recovering the object thought to be a weapon." ( People v. Collins (1970) 1 Cal.3d 658, 662, 83 Cal.Rptr. 179, 463 P.2d 403 ( Collins ); see also Sibron v. New York (1968) 392 U.S. 40, 65, 88 S.Ct. 1889, 20 L.Ed.2d 917.)
In Collins, officers detained the defendant after observing him engage in " 'furtive actions' " including "thrusting his hand into his left front pants pocket." ( Collins, supra, 1 Cal.3d at p. 660, 83 Cal.Rptr. 179, 463 P.2d 403.) An officer conducted a pat search, during which he felt a " 'little lump' " in the defendant's left front pants pocket. ( Ibid. ) The officer extracted the *770 object, which turned out to be a baggie of marijuana. ( Ibid. )
On appeal, the Collins court found that the search "exceeded lawful bounds." ( Collins, supra, 1 Cal.3d at p. 661, 83 Cal.Rptr. 179, 463 P.2d 403.) Without deciding if the pat search was "justified at its inception," the court concluded that the search "became impermissible in its scope" when the officer reached into the defendant's pocket, since the officer provided no facts to indicate that the object felt like a weapon. ( Id. at p. 664, 83 Cal.Rptr. 179, 463 P.2d 403.)
Here, the evidence does not show that Officer Prim reached into defendant's pocket immediately following the pat search. Rather, he conducted the pat search, performed a Romberg test to determine whether defendant was under the influence, arrested defendant, and then removed the items (a cell phone, lighter, plastic baggie containing methamphetamine, and wallet) during a lawful search incident to arrest. (See Birchfield v. North Dakota (2016) ---U.S. ----, [136 S.Ct. 2160, 2174], 195 L.Ed.2d 560 [it is a "long-established rule that a warrantless search may be conducted incident to a lawful arrest"].) As the items were not removed from defendant's pocket immediately after the pat search, the pat search was not "impermissible in its scope." (See Collins, supra, 1 Cal.3d at p. 664, 83 Cal.Rptr. 179, 463 P.2d 403.)
IV. DISPOSITION
The order of probation is affirmed.
I CONCUR:
GROVER, J.

Count 1 was originally charged as a felony, making this "a felony case for the purpose of appellate jurisdiction." (People v. Lynall (2015) 233 Cal.App.4th 1102, 1111, 183 Cal.Rptr.3d 129.)

At the preliminary hearing, Officer Prim described the Romberg test : he asked defendant to close his eyes and estimate 30 seconds. Defendant estimated that 30 seconds had gone by after only 16 seconds.