Filed 1/7/25  P. v. Wright CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JONATHAN WAYNE WRIGHT,<br><br>    Defendant and Appellant. | H051116<br>(Santa Clara County<br> Super. Ct. Nos. F1765268, F1765391) |

Appellant Jonathan Wayne Wright pleaded no contest in two separate cases to possession for sale of a controlled substance (Health & Saf. Code, § 11378), being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1)), and possession of more than 100 pounds of illegal fireworks (Health & Saf. Code, § 12700, subd. (b)(3)).[1]  On appeal, he argues that the trial court erred in denying his motion to suppress evidence uncovered as a result of his detention and pat search upon being found asleep in his truck. Finding no error in the trial court's denial of his motion to suppress, we will affirm.

## I.     BACKGROUND

### A.     *The Operative Pleadings*

In October 2017, in case number F1765391, the Santa Clara County District Attorney charged Wright with possession for sale of a controlled substance (Health &

---

[1] Undesignated statutory references are to the Penal Code.

Saf. Code, § 11378; count 1) and possession of a saps and similar weapons (§ 22210; count 2). The information also alleged that Wright had a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12).

On the same day, in case number F1765268, the Santa Clara County District Attorney charged Wright with being a felon in possession of a firearm (§ 29800, subd. (a)(1); count 1), possession of ammunition by a prohibited person (§ 30305, subd. (a)(1); count 2), and possession of more than 100 pounds of illegal fireworks (Health & Saf. Code, § 12700, subd. (b)(3); count 3). The information also alleged that Wright had a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12) and was on bail at the time of the offense (§ 12022.1).

**B.** *The Motion to Suppress*

Wright moved to suppress the contraband and other evidence underlying both cases. Wright argued that an initial June 2017 detention and pat search were not supported by reasonable suspicion, and that the search incident to his ensuing arrest and the subsequent search of his home were both tainted by the unconstitutionality of that initial detention and pat search.[2] At the hearing on the motion to suppress, the prosecution called Gilroy Police Department Sergeant Michael McMahon as its sole witness, and the court also admitted at Wright's request the video recording of the incident from McMahon's body camera.

McMahon testified that at around 8:49 a.m. the day of the offense, officers received a report of a man sleeping inside a truck parked in front of a donut shop. The truck was parked at what McMahon called a "slight angle" across two parking spots.

---

[2] The prosecutor in opposing the motion to suppress conceded that if the trial court found the pat search to be unlawful, the search warrant of Wright's home would be invalid. The stated basis for the search warrant for Wright's home was the June 2017 search of Wright and the discovery of 77.35 grams of methamphetamine and $735 cash on his person, mostly in $20 bills.

Wright was slumped over in the driver's seat, his head lowered in front of him, and he appeared to be breathing heavily. McMahon observed Wright for a few minutes while awaiting other officers, whom he had requested in case Wright was intoxicated and became violent on waking.

After the second unit arrived, McMahon knocked on the passenger door and identified himself as a police officer; it took several knocks to rouse Wright. Wright awoke shortly after McMahon knocked on the car door and on video appeared cooperative and apologetic. McMahon testified that he could see drool on Wright's chin (but acknowledged this was not visible in his body camera recording). At that point, McMahon suspected that Wright was either intoxicated or was experiencing a medical episode of some kind. Wright denied having been drinking. While Wright was still seated in the truck, McMahon asked for identification and allowed Wright to retrieve his wallet from his pocket for this purpose.

McMahon asked Wright to exit the truck, intending to gauge his mobility and responsiveness. Based on the surveillance video footage, as Wright emerged, there were three officers standing nearby. One officer can be heard saying that Wright had "been there since 5:00 or 6:40" in the morning.

Wright came slowly out of his truck, confirming that he could walk but that his leg was "a little messed up," and he appeared unsteady in McMahon's view. Wright was wearing baggy cargo shorts, and McMahon noticed a bulge in Wright's right front pocket that McMahon considered "the size of a weapon, a gun." McMahon was concerned that Wright might be armed based on his "delay in exiting and the fact that his arm had kind of gone down that side of his body."

When asked if he had any "guns or knives" on his person, Wright reached down to feel his front pockets before answering. One officer laughed, saying "I hope not," while McMahon told Wright not to "grab anything." Wright explained that he was "just seeing what" he had on him and then answered no. (At the hearing, McMahon could not recall

3

Wright's answer to the question about weapons, but he recalled that Wright did not admit being armed.)

McMahon then placed Wright's hands behind his back, patted Wright's right front pants pocket. McMahon felt a hard object inside Wright's pocket, which felt like a pipe used to smoke illegal drugs. Asked if what McMahon felt there was a pipe, Wright said, "Probably yes," at which McMahon asked permission to "take a look." Wright said that he preferred McMahon not do so but McMahon, tugging at the opening of Wright's pocket, replied that he could see the pipe there. McMahon could see a pipe with residue inside. McMahon then handcuffed Wright and removed a glass pipe and a plastic bag from Wright's right front pocket.

Searching Wright incident to arrest, McMahon found methamphetamine in the bag recovered from Wright's person, as well as cash and another pipe. A search of Wright's truck revealed a collapsible baton in the driver's side door.

The trial court denied the motion to suppress, finding that McMahon had reasonable suspicion to conduct the initial detention based on the totality of the circumstances and that McMahon was further justified to undertake the pat search for officer safety concerns.[3]

## C.     *The Plea and Sentencing*

In 2018, Wright pleaded no contest to possession for sale of a controlled substance (count 1) in case number F1765391 and both counts in case number F1765268.[4] He also admitted the allegations that he had a prior strike conviction in both cases.

---

[3] In October 2018, Wright filed a motion for reconsideration of the trial court's denial of his motion to suppress, arguing that the trial court in its earlier decision had relied upon *People v. Sacrite* (2018) 24 Cal.App.5th 77, which the California Supreme Court ordered depublished on September 12, 2018 (S249900). The trial court found that it lacked jurisdiction to consider the issue and denied the motion for reconsideration.

[4] Wright also pleaded no contest to counts in case number C1892412, which is not at issue in this appeal.

4

In April 2023, the trial court sentenced Wright to 16 months (one-third the midterm, doubled) for possession for sale of a controlled substance in case number F1765391 and 16 months (one-third the midterm, doubled) for being a felon in possession of a firearm and 16 months (one-third the midterm, doubled) for possession of more than 100 pounds of illegal fireworks in case number F1765268, all terms to run consecutively to Wright's sentence in an unrelated case.[5]  The trial court struck the additional punishment for the on-bail enhancement alleged in case number F1765391. As to both cases, the sentence was deemed served due to Wright's custody credits.

## II.  DISCUSSION

Wright argues that he was unconstitutionally detained when McMahon ordered him outside of his car as there was no indication he was involved in illegal activity and that McMahon lacked sufficient justification for the subsequent pat search.  Given the totality of the circumstances, we find no error in the trial court's denial of his motion to suppress.

### A.  *The Applicable Legal Standards*

"The Fourth Amendment of the United States Constitution prohibits the government from conducting unreasonable searches and seizures of private property." (*People v. Smith* (2020) 46 Cal.App.5th 375, 382.)  A warrantless search or seizure is presumptively unreasonable, and the prosecution bears the burden of establishing that the intrusion is nonetheless justified.  (*People v. Williams* (1999) 20 Cal.4th 119, 127.)

"[A] detention is a seizure within the meaning of the Fourth Amendment of the United States Constitution; a seizure occurs when an officer restrains a person's liberty by force or show of authority."  (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1081.)  "In

---

[5] At the same hearing, Wright was sentenced in case number F1902149, which is not a part of this appeal and which supplied the base term for Wright's aggregate sentence.

situations involving a show of authority, a person is seized 'if "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave" ' or ' "otherwise terminate the encounter," ' [citation], and if the person actually submits to the show of authority [citation]." (*People v. Brown* (2015) 61 Cal.4th 968, 974 (*Brown*).)

A temporary detention or seizure of a person must be supported by reasonable suspicion of criminal activity. (*Brown*, *supra*, 61 Cal.4th at pp. 980–981; see *Florida v. Royer* (1983) 460 U.S. 491, 498.) " 'The Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." ' " (*Brown*, at p. 981.)

An exception to the requirement of a warrant and probable cause for a search is a protective frisk for weapons when an officer "has reason to believe that he is dealing with an armed and dangerous individual." (*Terry v. Ohio* (1968) 392 U.S. 1, 27 (*Terry*).) The standard does not require an officer to have absolute certainty that an individual is armed: "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." (*Ibid.*) In other words, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the intrusion of a pat search. (*Id.* at p. 21.)

A *Terry* search thus requires reasonable suspicion that an individual is armed. " 'Because it is a "less demanding" standard [than probable cause], "reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause." [Citation.] The standard "depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." [Citation.] Courts "cannot reasonably demand scientific certainty . . . where none exists." [Citation.] Rather, they must permit officers to make

6

"commonsense judgments and inferences about human behavior." ' " (*People v. Flores* (2024) 15 Cal.5th 1032, 1041 (*Flores*); see also *Terry*, *supra*, 392 U.S. at p. 27.) The standard requires "an objective evaluation of the totality of the circumstances . . . confronting both the officer and the citizen." (*Flores*, at p. 1049; *Brigham City v. Stuart* (2006) 547 U.S. 398, 404 [reasonableness under Fourth Amendment judged under objective standard and an "officer's subjective motivation is irrelevant"].) Reasonable suspicion requires more than a hunch but less than a preponderance of the evidence and less than what is required for probable cause. (*Brown*, *supra*, 61 Cal.4th at p. 981.)

" ' "In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment." ' " (*Flores*, *supra*, 15 Cal.5th at p. 1043; see also *People v. Ovieda* (2019) 7 Cal.5th 1034, 1041 [applying federal constitutional standards to search and seizure issues under the California Constitution].)

**B.    *The Detention***

The parties agree the contact between McMahon and Wright was consensual when McMahon initially approached Wright's truck to conduct a welfare check. (*Brown*, *supra*, 61 Cal.4th at p. 974; see also *People v. Tacardon* (2022) 14 Cal.5th 235, 241 ["[o]fficers can approach people on the street and engage them in consensual conversation"].) But Wright argues that he was unreasonably detained once McMahon directed him to step outside of his truck. (See *Brown*, at p. 974 [detention occurs if person submits to show of authority and reasonable person would not have believed he or she was free to leave]; see also *United States v. Jefferson* (8th Cir. 1990) 906 F.2d 346, 349–350 [consensual encounter transformed into detention in part after officer requested identification cards and asked passenger to step out of the car].)

7

We agree that McMahon effectively detained Wright by directing him to step out of his truck but conclude the detention in this case was justified so that the officers could assess his condition and determine whether he was under the influence of alcohol or drugs. The officers had received a report that Wright had been parked near the donut shop for an extended period—long enough to prompt the report to police for a welfare check. Wright remained asleep while McMahon awaited backup, and his truck was irregularly parked in a manner that might reasonably suggest impairment. When Wright awoke, he disclosed that he lived nearby, ruling out the possibility he was merely unhoused or facing a long route to a more natural resting spot. (See *People v. Superior Court of L.A. County (Poole)* (1968) 267 Cal.App.2d 363, 365 [holding that "[i]t is certainly not improper or onerous to ask an individual to step out of an automobile in order to fully determine why or under what circumstances a person may have been asleep in an automobile parked on a public street"].)

To be sure, without reasonable suspicion of illegal activity, directing a person to step outside a car is generally unjustified. (*Barber v. Superior Court* (1973) 30 Cal.App.3d 326, 329 (*Barber*).) In *Barber*, the Court of Appeal found that an officer who happened on a family asleep in a car at 2:45 a.m. "neither suspected nor had any reason to suspect any illegal behavior" and that his purpose to ascertain the family's welfare had been satisfied upon the defendant's response that "everything was all right" when asked. (*Id.* at pp. 328–329.) Thus, the officer's later acts in detaining the driver were prompted only by " 'general curiosity.' " (*Id.* at p. 330.)

But *Barber* is distinguishable. In *Barber*, the officer "had [no] suspicion or hunch . . . [citation] that Barber and his family were doing anything other than resting by the roadside, as do many drivers, sleepy from travel, before continuing safely and alertly in traffic on the road." (*Barber*, *supra*, 30 Cal.App.3d at p. 329.) The hour, the roadside location, all the family being asleep—these factors all pointed to an obvious noncriminal explanation for their presence and condition. Whereas here, there was evidence

justifying the officers' concern for Wright's welfare and suspicion that he may be intoxicated or in need of help.

Wright also relies on *People v. Manning* (1973) 33 Cal.App.3d 586 (*Manning*). In *Manning*, the Second District considered an appeal from a grant of a motion to suppress when evidence was obtained after a search when officers on patrol saw the defendant slumped over in a car in a parking lot. (*Id.* at p. 591.) One officer spoke to the defendant through an open window and asked if the defendant was okay; at the suppression hearing the officer testified that the defendant " 'mumbled something' " that the officer could not understand, and the officer thereafter asked the defendant to exit the vehicle. (*Ibid.*) In granting the motion to suppress, however, the trial court surmised that the defendant had replied that he was either okay or all right. (*Id.* at p. 604.) *Manning* observed that when an attempt to ascertain an individual's condition "is made and is frustrated, it is reasonable for the officer to request the person to alight in order to ascertain his condition or to engage him, if possible, in intelligible conversation." (*Id.* at p. 605.)[6] And that "until such purpose [of the inquiry or detention] is accomplished, the inquiry need not terminate." (*Manning*, at p. 605.) Wright therefore argues that under this rationale in *Manning*, the purpose of the inquiry or detention had ceased by the time he cogently answered McMahon's questions while still seated inside his truck.

But *Manning* does not aid Wright. *Manning* itself noted that in the case before it, there was "not a scintilla of evidence that [Manning] was 'All right' or that the officer concluded that he was or should have done so." (*Manning*, *supra*, 33 Cal.App.3d at p. 605.) And as stated *ante*, there were objective reasons to suggest an additional inquiry

---

[6] In *Manning*, given the evidence presented at the hearing—that the trial court had made repeated references to the nonexistent and "mythical reply by defendant that he was 'Okay' or 'All right' " despite the lack of supporting evidence, the Second District ultimately held that "the suppression order was based upon either a ground wholly unsupported by evidence or upon an erroneous application of constitutional standards." (*Manning*, *supra*, 33 Cal.App.3d at pp. 604–605.)

into Wright's welfare was warranted given the length of time he had been asleep in the truck and the way it was parked.

Asking Wright to step out of the car was therefore a de minimis additional intrusion or extension of the otherwise justified detention. (See *Pennsylvania v. Mimms* (1977) 434 U.S. 106, 111 [when initial stop of car was "justified" additional intrusion to ask driver to step out of car is "*de minimis*"].)

## C.     *The Pat Search*

We also find that there are specific, articulable facts suggesting that Wright was armed rendering the subsequent pat search lawful. At the time McMahon engaged in the pat search, McMahon testified that Wright's right hand was down near the right side of the leg, and he thought Wright had appeared slow to exit from the truck. Further, Wright was wearing baggy cargo shorts, and McMahon saw a bulge on the right-side pocket. McMahon thus asserted that he was concerned that Wright had weapons based on the bulge in his pocket and his "delay in exiting and the fact that his arm had kind of gone down that side of his body." More importantly, Wright's seeming uncertainty when asked if he had "guns, knives" on his person—his inability to confirm that he was unarmed until after feeling his pockets—could suggest to a reasonable officer that Wright was armed or that he carried guns or knives often enough that he could not answer the officer's question without checking his own pockets. (See, e.g., *United States v. Valenzuela* (10th Cir. 2007) 494 F.3d 886, 890 [equivocal response to question about weapons "engenders the notion that weapons may be in the vehicle" and therefore did not unreasonably prolong detention].)[7]

---

[7] The Attorney General argues that even before the pat search, McMahon could see a glass pipe with residue in Wright's pocket and that for officer safety reasons, McMahon subsequently touched the outside of Wright's pocket and felt something hard that could have been a weapon. We read the record differently: McMahon testified that he *first* conducted a pat search for weapons during which he felt a hard object and *then* looked in Wright's pocket and could see a pipe with residue. The body camera footage does not show the pipe in plain view; instead, McMahon pulls open Wright's pocket after

Wright argues that "[t]he sum total of the evidence supporting [his] search was a bulge in his pocket that was caused by something unknown to McMahon." We disagree on this record. Considered in isolation, the mere fact that Wright wore baggy clothes or that it appeared that he had items in his pocket by itself does not support a reasonable suspicion to conduct a patdown search. (See *United States v. Job* (9th Cir. 2017) 871 F.3d 852, 861 ["the facts that [defendant's] pants appeared to be 'full of items' and he appeared nervous do not support the conclusion that he was engaged in criminal activity"]; *People v. Pantoja* (2022) 77 Cal.App.5th 483, 490 [trial court could have reasonably discounted testimony that defendant's clothing that " 'naturally has bulges in it' " as giving rise to reasonable suspicion].) But we must consider the totality of circumstances, in which a visible bulge in clothing *is* among the circumstances that may inform whether there is a reasonable suspicion that a defendant is armed. (*United States v. Colbert* (7th Cir. 2022) 54 F.4th 521, 529 [bulge in suspect's clothing can be a circumstance contributing to reasonable suspicion that a defendant is armed and dangerous]; *Thomas v. Dillard* (9th Cir. 2016) 818 F.3d 864, 877 [in assessing totality of circumstances, relevant considerations can include a visible bulge in a person's clothing that may suggest the presence of a weapon].)

---

asking if what McMahon felt in the pocket was a pipe. Although McMahon previously testified at the preliminary hearing that he had seen a pipe in Wright's pocket before commencing the search, the motion to suppress was litigated later, at a special hearing where the parties did not rely on the preliminary hearing testimony or seek to admit the preliminary hearing transcript into evidence. The trial court thus did not consider McMahon's preliminary hearing testimony. (§ 1538.5, subd. (i) [if offense was initiated by indictment or complaint and no motion was made at preliminary hearing, "the defendant shall have the right to fully litigate the validity of a search or seizure on the basis of the evidence presented at a special hearing"]; *People v. Neighbours* (1990) 223 Cal.App.3d 1115, 1120 [§ 1538.5 does not provide for admission of preliminary hearing transcript at a special hearing unless transcript is formally received in evidence].) Nor will we.

Wright counters that before McMahon conducted the pat search, McMahon had permitted Wright to reach into a pocket to retrieve his driver's license. But asking Wright for his identification while the encounter was still consensual does not limit the range of possible risks as the contact ripened into a detention. Although officers may not have had a reasonable suspicion that Wright was armed when he was still inside the truck, the circumstances had changed by the time he stepped outside of his vehicle. Officers could then more clearly see that Wright had the capacity to be carrying a concealed weapon (Wright's bulging cargo pocket) *and* consider Wright's equivocal response to McMahon's query about weapons.

" 'The judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety. The lives and safety of police officers weigh heavily in the balance of competing Fourth Amendment considerations.' " (*People v. Collier* (2008) 166 Cal.App.4th 1374, 1378.) Based on the totality of the circumstances, we conclude that there are sufficient specific and articulable facts supporting a finding that Wright was armed at the time of the pat search. (*Terry*, *supra*, 392 U.S. at p. 21.) In our independent judgment, we conclude the June 2017 pat search was constitutional under the Fourth Amendment. (See *Flores*, *supra*, 15 Cal.5th at p. 1043.) The trial court accordingly did not err by denying Wright's motion to suppress.

**D.**     *The Search of the Car and Search of Wright's Home*

Wright's sole basis for challenging the search incident to his arrest and the search of his home is that both derived from the pat search, and that the baton found in his car and the firearms, ammunition, and fireworks found in his home should likewise be suppressed as fruit of the poisonous tree. Because we conclude that the trial court properly denied Wright's motion to suppress evidence obtained in the June 2017 pat search, Wright's challenge to the search incident to his arrest and the execution of the search warrant at his home must likewise be rejected.

12

### III.      DISPOSITION

The judgments in case numbers F1765391 and F1765268 are affirmed.

_____

LIE, J.


WE CONCUR:


_____

BAMATTRE-MANOUKIAN, Acting P. J.


_____

GROVER, J.


*People v. Wright*
H051116